UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 90-252-CIV-HOEVELER

ROBERT C. HOOG and his wife,
JILL W. HOOG; THOMAS A. HODGES
and his wife, ROSINA A. HODGES;
and MARSHA WHITTAKER,

      Plaintiffs,

v.

MIAMI-DADE COUNTY,
a political subdivision of
the State of Florida,

      Defendant.
                              /

### ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

This case has a long history before me and this Court. The remaining plaintiffs, now reduced in number to five, sue Miami Dade County under the Takings Clause of the United States Constitution. In the Fifth Amended Complaint [ECF No. 317, June 23, 2006] the plaintiffs claim the zoning ordinances at issue diminished the value of their property to virtually nothing. The plaintiffs no longer challenge the validity of the ordinances, and instead seek only money damages. See Order Granting in Part Def.'s Mot. to Dismiss, Oct. 31, 2007, ECF No. 448.

On June 12, 2009, County filed two motions to dismiss for lack of subject matter jurisdiction [ECF Nos. 376 and 378]. One motion pertained to the takings claims by the Hoogs and Ms. Whittaker; the other motion pertained to the takings claims by the Hodges. In

1

moving for dismissal, the County argues that none of the plaintiffs' claims are ripe for federal adjudication.[1] After a stay and numerous extensions of the briefing schedule, the motions to dismiss are fully briefed and ready for a decision. The Court heard oral arguments in Chambers September 29, 2010. For the reasons that follow, the defendant's motions to dismiss are granted.

## I. Background

Many years ago, the plaintiffs purchased parcels of land in the East Everglades. According to the plaintiffs' submissions, Robert Hoog and his wife Jill purchased two lots in May 1973, each approximately 1.3 acres. Around the same time, Jill Hoog and her sister, Marsha Whittaker, purchased a 1.36 acre lot nearby. Pls.' Opp. p. 4, ECF No. 415. In 1980, Thomas Hodges and his wife Rosina purchased a 2.5 acre parcel in the same vicinity. Id. All of the parcels were located in the section of the East Everglades that became known as the "8 ½ Square Mile Area" (or "SMA" for short).[2]

---

[1] In my many years as a judge, this is the only time I have encountered a motion to dismiss a twenty-one-year-old case for "lack of ripeness."

[2] None of the plaintiffs continue to own the land. In recent years, the lots were acquired by the federal government in eminent domain proceedings, in which the government paid (or offered to pay) significant sums of money for the properties. In 2005, the government offered the Hodges $115,000 for their land (which the Hodges purchased in 1980 for $20,000). As of 2009, however, the Hodges refused to accept the settlement offer. See Def.'s Mot. to Dismiss, p. 6 n. 6, ECF No. 378. The Hoogs and Ms. Whittaker apparently accepted a $195,000 settlement for their land, which they purchased for a combined amount of $23,000 in the 1970s. See ECF No. 376, p. 6 n. 6. The sizable payments the plaintiffs

The SMA became a focus of environmental concern in the late 1970s and early 80s, primarily because of its wetland character and importance to the Biscayne Aquifer (the main source of drinking water for Miami). In response to these concerns, the County Commission enacted zoning ordinances in 1974 and 1981 to protect the integrity of the SMA. Prior to 1974, a landowner could build a single-family home on one acre in the East Everglades. The 1974 ordinance increased the minimum acreage requirement to five acres. In 1981, the Commission changed the zoning once again by enacting Ordinance 81-121. That ordinance, which has always been at the heart of this dispute, increased the acreage requirement in the SMA to one home per forty acres (the "forty-acre rule"). As a result, a number of landowners, including the Hoogs, Hodges, and Marsha Whittaker, sued the County under the Takings Clause, as well as for other constitutional and state-law violations.

There were initially two lawsuits about the ordinances. The first was the 1984 case of Bensch, et al. v. Metropolitan Dade County, et al., which was filed in federal court and assigned to me, under case number 84-2CV-216-HOEVELER. The second case, involving the same parties, was filed in state court in 1985. It was eventually removed to federal court, assigned the case number 86-CV-1636-HOEVELER, and consolidated with the ongoing Bensch

---

received for their lots prove that the land was *not* rendered valueless by the zoning ordinances. The County did not pursue this argument.

lawsuit.

The plaintiffs in the Bensch litigation asserted takings claims against the County (among other causes of action), alleging that the zoning ordinances deprived them of any reasonable beneficial use of their property and extinguished their legitimate investment-backed interests, without just compensation. The case came before me on the County's motion to dismiss the plaintiffs' federal claims for lack of jurisdiction. Specifically, the County argued the takings claims were not "ripe" under the standard of Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985).

In 1986 as well as 2011, Williamson County governs the jurisdictional challenges posed by the County's motions. In Williamson, the United States Supreme Court considered the case of a Tennessee real estate developer who brought a § 1983 suit against a local zoning commission for an unjust taking of his property by the application of various land-use regulations. Id., 473 U.S. at 182-183. The Supreme Court declined to reach the merits of the dispute, focusing instead on the issue of ripeness. Id. at 185. The Court held that the developer's claim was premature for two reasons. First, by failing to apply for available zoning variances, the developer had failed to obtain "a final decision regarding how it will be allowed to develop its property." Id. at 190. The Court cautioned that this was not a requirement that the developer

4

"exhaust" administrative remedies. Instead, the developer was only required to obtain a final decision from the commission about whether the developer could obtain a variance for his development plan, as it is only when "the initial decisionmaker has arrived at a definitive position on the issue that. . . an actual, concrete injury [has occurred]." Id. at 193.[3]

The other reason the claim was premature, according to the Court, was that the developer failed to ascertain whether the State of Tennessee would provide just compensation for the alleged taking. The Court noted that the Fifth Amendment prohibits only government takings unaccompanied by just compensation; however, "[i]f the government has provided an adequate process for obtaining compensation," and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. Id. at 194-95 (citations omitted). Put differently, "if a State provides an adequate procedure for seeking

---

[3] The Supreme Court explained the rationale for this rule as follows: "Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although the question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty. . . . this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. . . . Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." Id., 473 U.S. at 190-191 (citations and internal quotation marks omitted).

just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and has been denied just compensation." Id. The Supreme Court concluded that the developer's claim was not ripe since the state provided an inverse condemnation action for aggrieved property owners, and the developer failed to avail itself of this remedy before bringing its § 1983 action in federal court. In subsequent cases, these two elements have been referred to as "the final decision hurdle and the just compensation hurdle." Eide v. Sarasota County, 908 F.2d 716, 720 (11th Cir. 1990). If either one of the elements is missing, subject matter jurisdiction does not exist.

On June 18, 1986, the County moved to dismiss the Bensch case based on Williamson County's ripeness requirement. After a review of the record, I concluded that the plaintiffs' takings claims were not ripe for federal adjudication, because the plaintiffs had not satisfied either prong of the two-part Williamson test. In my November 3, 1986 order, I wrote that:

> This Court finds that either of the reasons enunciated by the Supreme Court in Williamson Planning Comm'n v. Hamilton Bank constitutes a ground for dismissal of this cause. As stated above, the Plaintiffs' failure to seek variances from the Board of County Commissioners renders the cause premature under Williamson Planning Comm'n v. Hamilton Bank, supra. See also MacDonald, Summer & Frates v. Yolo County, 106 S.Ct. [2561, 2567 (1986)]. That Florida law does not permit compensation through inverse condemnation in cases involving challenges to zoning ordinances does not mean that this Court can

6

>       overlook Plaintiffs' failure to present
>       development plans to or seek zoning variances
>       from the Board of County Commissioners.
>
>                        * * *
>
>       Until the Plaintiffs in this cause seek
>       variances that would allow them to develop
>       their property in accordance with their plans,
>       if any, or avail themselves of available and
>       facially adequate state procedures by which
>       they might obtain just compensation, either by
>       seeking invalidation of the zoning ordinance,
>       challenging a permit denial, see [Dade County
>       v. National Bulk Carriers, Inc., 450 So. 2d
>       213, 216 (Fla. 1984)], enforcing the SURs
>       plan, or bringing inverse condemnation actions
>       for their physical invasion due to flooding
>       claims, see, e.g., Leon County v. Smith, 397
>       So.2d 262 (Fla. 1st DCA 1981) and cases cited
>       therein, their regulatory taking claims are
>       premature whether advanced under the Just
>       Compensation Clause of the Fifth Amendment or
>       the Due Process Clause of the Fourteenth
>       Amendment. See MacDonald, Summer & Frates v.
>       Yolo County, supra; Williamson Planning Comm'n
>       v. Hamilton Bank, supra.

Bensch, et al. v. Metropolitan Dade County, et al., 84-CV-2216-

HOEVELER, Order of Dismissal, pp. 5-7 (S.D. Fla. Nov. 3, 1986).[4] My

holding was clear and unambiguous. The plaintiffs failed to pass

both the "the final decision hurdle and the just compensation

hurdle." Eide, 908 F.2d at 720. Accordingly, I dismissed without

prejudice 84-2CV-216-HOEVELER, because it was not ripe, and I

---

[4] The Court's November 3, 1986 Order appears at ECF No. 377-3 in the docket for this action, 90-CV-252-HOEVELER. The plaintiffs appealed the November 3, 1986 dismissal to the Eleventh Circuit but later dismissed that appeal. Def.'s Ex. E, ECF No. 377 (notice of dismissing appeal).

remanded 86-CV-1636-HOEVELER to state court.

The plaintiffs then proceeded in their remanded state-court action to seek relief under Florida law, in hopes of satisfying the second prong of the Williamson test. The county court dismissed the plaintiffs' amended complaint, with prejudice, and the plaintiffs appealed to Florida's Third District Court of Appeal. In Bensch v. Metropolitan Dade County, 541 So. 2d 1329 (Fla. 3rd DCA 1989), the Third District held that:

> As the plaintiffs acknowledge, the entire basis of their action as against Dade County for both money damages and injunctive relief because of the zoning restrictions is based upon the proposition that a constitutional "taking" of their property has occurred. Fatally to their claim, however, no such taking was properly alleged. This is true for **two reasons**[.]

Id. at 1329 (citations and footnotes omitted; emphasis added). The first reason was that the plaintiffs had not alleged the zoning regulations deprived them of all beneficial uses, including agricultural ones, of their property. Id. More importantly, the second reason was that: "(b) There was no showing that the plaintiffs had attempted to or could not achieve their desired use of the land in question by employing the variance procedures written into the zoning ordinances for just that purpose," as required by Williamson County. Id. After the Florida Supreme Court denied the plaintiffs' petition for certiorari, the plaintiffs filed the present case in federal court as Bensch, et al. v. Miami

Dade County, et al., 90-CV-252-HOEVELER.[5] It is undisputed that the plaintiffs never filed any zoning-related applications with the County after: (1) my November 3, 1986 dismissal order, in which I expressly held that the Hoogs/Hodges/Whittaker had not yet sought the proper variances; or after (2) the decision by the Third District, which upheld the dismissal of the Hoogs/Hodges/ Whittaker's state-law takings claims because they never attempted to obtain a variance.

## II. Legal standard

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied, 449 U.S. 953 (1980) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id.

---

[5] Fred and Bonita Bensch, along with dozens of the other original plaintiffs (and all but one defendant) have since dropped their claims or been dismissed. The details about when the case caption was changed to Hoog, et al. v. Miami Dade County are lost to history.

9

These two forms of attack require different treatments. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion--the court must consider the allegations of the complaint to be true. Id. (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897, 102 (1981)). But when the attack is factual:

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--its very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Lawrence v. Dunbar, 919 F.2d at 1529 (citing Williamson v. Tucker, 645 F.2d at 412-13; Mortensen, 549 F.2d at 891). The attack in this case is factual.

### III. Analysis

The County makes several arguments about why the plaintiffs' suit is not ripe. All of the arguments revolve around a single undisputed fact, which is that: Nothing has changed since November 3, 1986 with respect to whether the plaintiffs received a "final decision" under prong-one of Williamson County. The factual record on that particular jurisdictional question is the same as it was

when I dismissed the case for lack of ripeness twenty-five years ago. None of the plaintiffs subsequently filed an application with the County for zoning relief; none submitted development proposals or applied for a variance from the challenged ordinances; none had any such application denied by any agency of the County.[6] <u>See,</u> <u>e.g.,</u> LaFerrier Dec. ¶¶ 5-6, June 11, 2009, Def.'s Ex. L, ECF No. 377-13.

### A.

The County first argues that principles of collateral estoppel prevent the plaintiffs from re-arguing the ripeness issue. "[C]ollateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." <u>Pleming v. Universal-Rundle Corp.</u>, 142 F.3d 1354, 1359 (11th Cir. 1998) (<u>citing</u> <u>I.A. Durbin, Inc. v. Jefferson Nat. Bank</u>, 793 F.2d 1541, 1549 (11th Cir. 1986)). The party attempting to claim the benefit of collateral estoppel or issue preclusion must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior

---

[6] In 1985, the Hodges applied for a blanket exemption from the forty-acre requirement. Their application did not include a development plan, which would have allowed the County to evaluate the impact of the variance on the zoning. The Hodges gloss over the fact that the Zoning Board (and the County Commission on appeal) rejected their 1985 variance application long before my November 3, 1986 order, and those events were already a matter of record when I ruled that there had been no final decision about how the plaintiffs would be allowed to develop their property, as required by <u>Williamson County</u>.

proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. Pleming, 142 F.3d at 1359; Dailide v. United States Attorney Gen., 387 F.3d 1335, 1342 (11th Cir. 2004).

The jurisdictional issue at stake in this litigation--i.e., whether the plaintiffs' claims are ripe under the first prong of Williamson County--is the same jurisdictional issue I resolved in November of 1986 in 84-CV-2216-HOEVELER. In that ruling, I expressly held that the plaintiffs' failure to seek variances rendered the cause premature. That is precisely the kind of judicial ruling entitled to preclusive effect in future litigation. See Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980) ("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merit so as to make the case *res judicata* on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims."); Thompson v. Florida Bar, 526 F. Supp.2d 1264, 1274 (S.D. Fla. 2007) ("A dismissal on jurisdictional or other non-merit grounds (e.g., venue, personal jurisdiction, forum non-conveniens) still has preclusive effect (at least in the same court) with regard to those

12

bases for dismissal").[7]

In response, the plaintiffs attempt to offer a different interpretation of my November 3, 1986 order of dismissal. Specifically, they argue that my basis for dismissal was *not* the "final decision" requirement under prong one of <u>Williamson County</u> but, rather, the "just compensation" requirement under prong two. The plaintiffs matter-of-factly write: "Clearly, the plaintiffs met the conditions placed on them in this Court's November 3 order--go exhaust your State Court and administrative remedies because without that exhaustion, the claims were premature. Plaintiffs met those conditions. . . and their claims are now ripe." Pls.' Opp. p. 16, ECF No. 415. But unfortunately there is simply no way to avoid the plain meaning of my 1986 ruling: "*either of the reasons* enunciated by the Supreme Court in <u>Williamson Planning Comm'n v.</u>

---

[7]    In addition, the County submits that Florida's issue-preclusion doctrine would also prevent re-litigation of the ripeness question, in light of the fact that none of the facts have changed since the Third District's 1989 ruling in <u>Bensch v. Metropolitan Dade County</u>, 541 So. 2d 1329 (Fla. 3rd DCA 1989). In that lawsuit, the same parties fully litigated the issue about whether the plaintiffs' sought and/or received a "final decision." The Third District confronted the issue squarely, and relied on <u>Williamson County</u> (which governs the ripeness question under both federal and Florida law) in ruling that the plaintiffs had not sought the necessary variance to ripen their takings case, and that the County's variance mechanisms remained open. <u>Id.</u> at 1329. That finding was necessary to the Third District's decision. <u>See Agripost, LLC v. Miami-Dade County</u>, 525 F.3d 1049, 1052, 1055 (11th Cir. 2008) (<u>citing Dadeland Depot, Inc. v. St. Paul Fire & Marine Inc.</u>, 945 So. 2d 1216, 1235, 1052 n. 3 (Fla. 2006) (discussing the preclusive effect of prior state litigation and examining Florida's preclusion doctrine).

Hamilton Bank constitutes a ground for dismissal"; I could not "overlook Plaintiffs' failure to present development plans to or seek variances from the Board of County Commissioners." The Hodges had indeed sought one variance from the County in 1985. But it was not a meaningful variance that could trigger a final decision, for the reasons discussed in more detail below.[8]

B.

Even in the absence of collateral estoppel, the independent factual record demonstrates the plaintiffs' claims are not ripe. The plaintiffs correctly point out that the Hodges sought a variance for building a home on their vacant 2.49 acre lot. The Hodges filed an application with the County for zoning approval, requesting two things:

> 1. Non-use variance of the lot frontage and area requirements [in Ordinance 81-121,] to permit a parcel of land with a lot frontage of 165 feet, where 200 feet are required, in an area of 2.5 gross acres, where 40 gross acres are required as a proposed single family residence building site.

> 2. An unusual use to permit the maintenance and continued use of an existing 12 by 60 foot trailer as watchman's quarters [while the home is being constructed].

Hearing Tr., Zoning Appeals Board Meeting of March 12, 1986, p. 3,

---

[8] In addition, it appears the plaintiffs also failed to overcome the second prong of Williamson County. Third District concluded that their state-court efforts to seek compensation were premature, because they had not obtained a final decision from the County.

ECF No. 415-4. In sum, the Hodges sought permission to maintain a non-compliant trailer on their property, and to build a single family home. During the Zoning Appeals Board hearing, representatives from the Zoning Department and the Planning Department both recommended the Hodges' application should be denied without prejudice, based on a number of considerations. Id. at 3-8. For instance, they cited discrepancies between the Hodges' drawings of the property layout and its actual layout; the fact that there was little, if any, agricultural uses on the property; five wrecked automobiles on the property; and the standard policy and land-use concerns about the SMA. The Zoning Appeals Board also noted that the Hodges had not obtained (and likely would be unable to obtain) building permits from, for example, the Department of Environmental Resources Management (DERM), regardless of whether or not variance to the forty-acre rule was granted.[9] The Board denied, without prejudice, the Hodges' application to build a single-family home. The County Commissioners denied the Hodges' appeal from the Zoning Board on May 8, 1986 (six months before my November 3, 1986 order of dismissal). Throughout the process, the Hodges never

---

[9] DERM's position on the Hodges' variance application was read into the record at the hearing; DERM was opposed to allowing a single-family home on the land because of the adverse impact that "occurs to the County through the surface and the ground water from the flooding of the septic tanks during a flood which occurs out in the East Everglades. The approval of the subject application would set a precedent in allowing those types of residential uses to be developed." Hearing Tr. p. 23-24. DERM had in some instances issued approvals of residential building projects in the East Everglades.

provided a development plan along with their application, even
though such a plan could be critical to the County's ability to
assess the zoning impact of their requested variance.[10] In fact, it
is clear from the March 2009 deposition testimony of Thomas and
Rosina Hodges that they themselves were unsure about what they
intended to build on the 2.5 acres, including the size of their
proposed home, its location on the land, the number of bedrooms and
bathrooms, and so forth. Mr. Hodges had evidently drawn sketches of
what he hoped to build, but never submitted them. T. Hodges Dep.
110, March 27, 2009, ECF No. 379-11. "[I]f I would have been
granted the building permit," he explained, "then I would have
seriously undertaken a set of drawings to build a house and at that
time we would have decided how big." Id. Despite the well-known and
obvious advantages to providing a development proposal, the Hodges

---

[10] The plaintiffs draw attention to a portion of the 4/24/09
deposition testimony of Diane O'Quinn Williams, former director of
Miami Dade County Department of Planning and Zoning, in which she
testified that the avenue the Hodges pursued to seek a variance was
a valid one. But she also testified that a petitioner's application
to build a home on less than forty acres would be assessed under
"the general standards in Chapter 33 of the code, also, which are
the standards applied to any type of variance application. It deals
with reviewing an application to determine its hazards to the
public, traffic, water usage, that type of thing. But those
[standards] combined then with the intent of the '81 ordinance
would have been what was taken into consideration" in granting or
denying a variance application. Williams Dep. p. 20, April 24,
2009, ECF No. 379-12. She also explained that the County considers
the specific site plans for the parcel's development. Id. at 84. It
is undisputed that applications that include specific development
plans can result in a variance. Id. at 20-21. The County provided
several examples of variances that were granted under both the 1974
and 1981 ordinances. See Def. Ex. ECF No. 423-3.

simply sought a "blanket exemption" from applicable zoning regulations.

I am not unsympathetic to the Hodges' disappointing situation. They tell a compelling story of their plan to raise three children in the frontier of the East Everglades, growing strawberries and keeping bee hives for honey. That was more than thirty years ago. Unfortunately, I was not satisfied in 1986, and I remain unsatisfied today, that the County's denial of the Hodges' pre-1986 variance application met the final decision requirement of Williamson County and its progeny. The Third District reached the same conclusion when it assessed the same facts in 1989. In my opinion, and in light of the variance procedures in effect, the Hodges' application was too generic and abstract to allow any of the County zoning agencies to reach a "final decision regarding the application of the regulations to the property at issue." Williamson, 473 U.S. at 186; see also Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d at 179 (quoting Unity Ventures v. Lake County, 841 F.2d 770, 775 (7th Cir. 1988), cert. denied, 488 U.S. 891, 109 (1988) ("plaintiff must demonstrate a final decision on a 'development plan submitted, considered, and rejected by the governmental entity."); Reahard v. Lee County, 30 F.3d 1412 (11th Cir. 1994) (citing Williamson County, 473 U.S. at 186) ("In most cases, no 'final decision' has been reached until an aggrieved landowner has applied for *at least one variance* to a contested

17

zoning ordinance.") (emphasis added); <u>Resolution Trust Corp. v.
Town of Highland Beach</u>, 18 F.3d 1536, 1547 (11th Cir. 1994) ("in
most instances a property owner must apply for a variance for a
less intrusive use, to determine what use the municipality will
allow"); <u>Executive 100, Inc. v. Martin County</u>, 922 F.2d 1536, 1540
(11th Cir.) (aggrieved landowner must "have sought variances or
pursued alternative, less ambitious development plans"), <u>cert.
denied</u>, 502 U.S. 810 (1991).

c.

The Hoogs and Ms. Whittaker are in an even worse situation,
because they admittedly *never* submitted their own variance
applications--not before or after my November 3, 1986 dismissal
order. They point out, however, that they shared the same lawyer as
the Hodges, and they claim they were basically in the same
predicament as the Hodges (at least insofar as all of them wished
to escape the forty-acre rule). Under this theory, the Hodges'
variance application was a "tester" case: Once that application was
denied, it became clear to the other SMA landowners that it would
be futile to waste their own time and money in seeking a similar
variance. The Court cannot accept this argument. The plaintiffs
rely on judicial decisions stating that, obtaining a final decision
is not necessary when the outcome of administrative proceedings is
certain to be adverse to the petitioner, or when the zoning board
has previously stated a definitive policy contrary to the

petitioner's position. The exception is based on the Supreme Court's comments in the <u>Williamson County</u> opinion itself. But the problem with the plaintiffs' position is that the Hoogs' and Whittaker's would-be variance applications were not automatically doomed for failure. The record establishes that variance applications were decided based, in part, on site-specific factors, even in the SMA; and that the County allowed granted a number of variances.[11] In any event, the Hoogs and Ms. Whittaker obviously cannot ride on the coat tails of the Hodges to avoid the final decision requirement, because even the Hodges' did not obtain a final decision.

### D.

Finally, the plaintiffs argue that they are conceivably exempt from both the five-acre zoning ordinance from 1974, as well as the forty-acre rule from 1981. According to the plaintiffs, they bought their land before those ordinances took effect, and therefore had vested rights under the more lenient one-house-per-acre zoning. Again, the plaintiffs rely on deposition testimony of Ms. Williams, who stated that landowners could have obtained a building permit prior to 1974 to build a home on one acre, provided all other non-zoning issues were met, such as rights-of-way, DERM regulations,

---

[11] Ms. Williams recalled that at least two instances when petitioners were given exceptions to the forty-acre rule. <u>See</u> Williams Dep. 78-83. Defendant's counsel has pointed out other instances.

and so forth. The plaintiffs contend that the questions of *when* they bought their lots, and whether they were grandfathered under the one-acre zoning, involve factual and legal issues for trial. However, the process for being grandfathered is much more complex than that, as evidenced by the testimony of Ms. Williams (and some of the plaintiffs' testimony, too). Moreover, the Court finds that this contention comes too late. The County never physically intruded into the plaintiffs' land. It was the effect of the zoning regulations that constituted the alleged Fifth Amendment taking. Now, after decades of arguing the zoning ordinances diminished the value of their land to essentially nothing, the plaintiffs seem to advance the inconsistent theory that the zoning restrictions didn't even apply to their land. If the forty-acre rule didn't apply, then there was no taking to begin with.

## IV. Conclusion

I have presided over this case for twenty-one years, and I have presided over the zoning dispute between these plaintiffs and this defendant for twenty-six years. Today's order addresses only the narrow question before me, which is simply whether the plaintiffs overcame the hurdles necessary to have standing to bring this federal takings lawsuit. The answer to that question is clearly, no. The broader question--and undoubtably the one that motivated the plaintiffs (and two generations of Silverios as the plaintiffs' lawyers) to pursue this cause for so long--is whether

20

landowners in the East Everglades were unfairly marginalized by Miami Dade County's development and conservation plans over the past four decades. That debate will continue. It is hereby:

**ORDERED AND ADJUDGED:** Miami Dade County's motions to dismiss for lack of subject matter jurisdiction are granted. This case is dismissed.

**DONE AND ORDERED** in Miami, Florida, March $3/$ 2011.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE

21